IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHARA GARRETT, et. al., § | |
| § | |
| Plaintiff(s), § | |
| § | |
| V. § | CIVIL ACTION NO. 4:21-cv-00154 |
| § | |
| HOOTERS OF AMERICA, LLC, § | |
| § | |
| Defendant(s). § | |

## MEMORANDUM AND RECOMMENDATION

Defendant Hooters of America, LLC's pending Motion to Compel Individual Arbitration, Strike Class Claims, and Stay Action (Document No. 12) has been referred to the undersigned Magistrate Judge for a Memorandum and Recommendation. Having considered that motion, the Plaintiff's Response (Document No. 15), the Defendant's Reply (Document No. 16), the claims alleged by Plaintiff, the evidence relative to the agreement to arbitrate, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Dismiss, Compel Individual Arbitration, and Strike Class Claims (Document No. 12) be GRANTED.

**I. Background**

Plaintiff Shara Garrett ("Garrett") filed suit both individually and on behalf of all similarly situated current and/or former employees against her former employer Hooters of America ("Hooters") after she was terminated on or about March 16, 2020. Garrett was employed by Hooters as a server and bartender from July 2018 to March 16, 2020. Garrett was terminated without cause or suffered other employment loss as part of, or as the result of, a plant closing or

1

mass layoff ordered by Hooters. (Document No. 1). Garrett alleges that Hooters violated the Worker Adjustment Retraining and Notification Act, 29 U.S.C. §§ 2101-2109 ("WARN Act") by failing to provide thirty days advance written notice of the plant closing or mass layoff and not providing any termination wages and benefits. (Document No. 1). Under Fed. R. Civ. P. 23, Garrett claims she should be representative of a WARN Act Class. (Document No. 1). Hooters promptly filed a Motion to Compel Individual Arbitration, Strike Class Claims, and Stay Action, as well as moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In that motion, Hooters maintains that all of Garrett's claims are subject to arbitration, Garrett having agreed to arbitrate such claims when she applied for employment with Hooters on May 22, 2018 and through Hooter's onboarding process on June 23, 2018. (Document No. 12). Further, Hooters asserts that Garrett gave up the right to proceed as a class when signing the arbitration agreement. (Document No. 12). Garrett responds that she has no recollection of agreeing to arbitration and was unaware of such agreement until she brought suit, and that she never would have agree to arbitrating claims with an arbitrator paid by Hooters. (Document 15). Hooters replies that Garrett failing to recall signing the arbitration agreement does not affect the validity of the agreement itself, and by continuing employment she assented to the terms of the agreement. (Document No. 16).

**II. Discussion**

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In the Fifth Circuit, "a two-prong inquiry is used to determine whether parties should be compelled to arbitrate their disputes". *Reliable Energy Sols. v. Amalfi Apartment Corp.*, No. 4:16-cv-03346,

2

2017 U.S. Dist. LEXIS 125396 (S.D. Tex. 2017) (citing *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001); *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996)). For an arbitration agreement to be enforceable, a party must show that: (1) there is a valid agreement; and (2) the dispute falls within the scope of the agreement. *Huckaba v. Ref-Chem*, 892 F.3d 686, 688 (5th Cir. 2018). The party seeking to compel arbitration bears the burden of showing both elements. *Zinante v. Drive Elec.*, L.L.C., 582 F. App'x 368, 369 (5th Cir. 2014). Once that showing is made, the party seeking to avoid arbitration must show that the arbitration agreement is somehow invalid. *Prevost v. Burns Intern. Sec. Services Corp.*, 126 F. Supp. 2d 439, 442 (S.D. Tex. 2000) (citing *T &R Enters., Inc. v. Contl. Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154–55 (5th Cir. 1992)). This burden shifting is considered in the same type of evidentiary construct as a motion for summary judgment. *Trujillo v. Volt Management Corp.*, 846 Fed.Appx. 223, 236 (5th Cir. 2021). That means that the party opposing arbitration must offer admissible evidence to raise a genuine issue of fact on the validity of the arbitration agreement. *Id.*

The party moving to compel arbitration must show that the agreement meets all the requisite contract elements to be considered valid. *Huckaba*, 892 F.3d at 687. Under Texas law, a binding contract requires proof of: "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Id.* at 689 (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). The last element is a question of the parties' intent. *Id.* (citing *Tricon Energy Ltd. V. Vinmar Int'l, Ltd.*, 718 F. 3d 448, 454 (5th Cir. 2002)). Signatures are not required so long as both parties give consent to the terms of the

agreement, and there is no evidence of the intent to require a signature to make the contract valid. *Id.*

Under the Federal Arbitration Act, courts generally enforce arbitration agreements unless it is invalid because of existing law or general defenses, such as fraud, duress, and unconscionability. *Epic Sys. v. Lewis*, 138 S.Ct. 1612, 1616, 200 L.Ed.2d 889 (2018) (quoting *AT&T Mobility L.L.C. v. Concepcion*, 563 U.S. 333, 339 (2011)). Any doubts or ambiguities as to the scope of the arbitration provision are ordinarily resolved in favor of arbitration. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013) (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

Here, the document upon which Hooters seeks to compel arbitration was included as part of Garrett's employment application. The relevant portion of the electronic arbitration agreement provides, as follows:

> HOOTERS OF AMERICA, LLC ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL
>
> This Agreement is entered into between Hooters of America, LLC and its affiliates, including but not limited to HOA Restaurant Holder, LLC ("Company") and the undersigned applicant/employee (hereinafter "Individual"). Excluding claims which must, by statute or other law, be resolved in other forums, Company and Individual agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment, including but not limited to, all claims beginning from the period of application through cessation of employment at Company and any post-termination claims and all related claims against managers, by binding arbitration pursuant to the JAMS Comprehensive Arbitration Rules & Procedures ("Rules") of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Disputes related to employment include, but are not limited to, claims or charges based upon federal or state statutes, including, but not limited to, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, and any other civil rights statute, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other wage statutes, the WARN Act, claims based upon tort or contract laws or common law or any other federal or state or local law affecting employment in any manner whatsoever…

> Individual understands that he/she will not be considered for employment by the Company unless he/she signs this Agreement.
>
> By signing this Agreement, Individual and the Company waive their right to commence, be a party to, or act as a class member in, any class or collective action in any court action against the other party relating to employment issues. Further, the parties waive their right to commence or be a party to any group, class or collective action claim in arbitration or any other forum…
>
> INDIVIDUAL AND COMPANY UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, TO INITIATE OR BE A PARTY TO A GROUP OR CLASS ACTION CLAIM, AND THE RIGHT TO A JURY TRIAL, BUT, BY EXECUTING THIS AGREEMENT, BOTH PARTIES GIVE UP THOSE RIGHTS AND AGREE TO HAVE ALL EMPLOYMENT DISPUTES BETWEEN THEM RESOLVED BY MANDATORY, FINAL AND BINDING ARBITRATION. ANY EMPLOYMENT RELATIONSHIP BETWEEN INDIVIDUAL AND COMPANY IS TERMINABLE AT-WILL, AND NO OTHER INFERENCE IS TO BE DRAWN FROM THIS AGREEMENT.
>
> (checking the checkbox above is equivalent to a handwritten signature)

(Document No. 12-1, Exhibit A at 7-9). In addition, as part of Garrett's onboarding process, Garrett signed Hooters "Handbook Acknowledgement" (Document No. 12-1, Exhibit D at 18) on June 23, 2018, which contained the following provision as part of Hooters Dispute Resolution Policy:

> Step Four: Final and Binding Arbitration
>
> If you have exhausted all of the resources above, your dispute remains unresolved, and you wish to pursue your claim, you must proceed with arbitration. You have entered into an Arbitration Agreement and Waiver of Jury Trial ("Arbitration Agreement") with Hooters, which is incorporated by reference herein. The Arbitration Agreement governs the process for the arbitration. This process is binding on both you and Company. Legally protected rights covered by arbitration include, but are not limited to:
>
> 1. Claims for wages or other compensation
> 2. Claims for breach of contract or agreement
> 3. "Tort" claims, such as personal injury or distress
> 4. Wrongful termination

5. Claims for harassment or discrimination, including claims based on sex, race, religion, national origin, age, medical condition or disability
6. Claims for benefits under any Hooters Team Member benefit program
7. Claims for violation of any non-criminal federal, state or other governmental law

(Document No. 12-1, Exhibit C at 29). Hooters further submitted evidence that in order to complete the employment application process, an applicant must "click" to agree to the arbitration agreement and that Garrett "clicked" the button, signifying that she understood and agreed to the Arbitration Agreement. (Document No. 12-1, Exhibit A at 9). Garrett also digitally signed the Hooters Handbook Acknowledgment document, which contained a provision regarding the Arbitration Agreement. (Document No. 12-1, Exhibit C at 29). In addition, Garrett signed the Arbitration Agreement again on June 23, 2018, during Hooters' onboarding process by digitally printing her name and providing her social security number on the document. (Document No. 12-1, Exhibit E at 20).

In response to Hooter's Motion to Compel Arbitration, Garrett maintains that she does not remember signing the arbitration agreement and that she would never have agreed to something that would allow "an arbitrator who is paid by Hooters to determine whether I have a claim against the company." (Document No. 15-1, at 3). Additionally, Garrett claims Hooters falsified her signature stating, "both the arbitration agreement and the handbook acknowledgement appear to have been electronically 'signed' before I was ever hired by Hooters and before I attended new employee orientation and training. The only thing I remember being required to complete online were some classes for new employees, and my manager completed some of those for me as I previously explained." (Document 15-1 at 3). Garrett intimates that if the agreement was signed, it was not signed by her, but rather a Hooters manager or other employee. She asserts that she does not recall ever meeting the manager who signed her documents, Ruben Salazar. (Document 15-1

at 3). Garrett also maintains that she remembers filling out her new-hire paperwork manually on paper, rather than digitally. (Document 15-1 at 1).

The evidence in the record establishes the existence and validity of an arbitration agreement between Hooters and Garrett. The arbitration provision at issue is contained in the Arbitration Agreement section of the employment application documents and in various materials from the onboarding process. The Arbitration Agreement expressly states that Garrett and Hooters "agree to have all employment disputes between them resolved by mandatory, final and binding arbitration." (Document No. 12-1, Exhibit A at 9). In addition, Hooters has submitted uncontroverted evidence that Garrett accepted the terms of the arbitration agreement by "clicking" her acceptance and digitally signing a document with her social security number. (Document No. 12-1, Exhibit A at 9; Document No. 12-1, Exhibit E at 20). Garrett could not have been hired, or even considered for employment with Hooters, absent her acceptance of the arbitration agreement. The acceptance, coupled with the terms of the arbitration provision, renders the arbitration provision a valid agreement to arbitrate.

Garrett maintains, *with argument*, that she did not consent to the terms of the arbitration provision because she never saw or signed the agreement and did not know what arbitration was until Hooters raised the issue in the lawsuit. (Document 15 at 5). Garrett however, has provided no evidence to this effect. Instead, Garrett merely maintains that she would never have agreed to something that allows "an arbitrator paid by Hooters to determine whether I have a claim against the company," and that the documents appear to have been "electronically 'signed' before I was hired by Hooters" (Document 15-1 at 2-3). However, Garrett's argument does not overcome Hooter's evidence that Garrett consented to the arbitration agreement when she "clicked" and digitally signed her acceptance, or the evidence, within the arbitration agreement itself, that it was

7

mutually binding. (Document No. 12-1, Exhibit A at 9; Document No. 12-1, Exhibit E at 20). *See Trujillo*, 846 Fed.Appx. at 236 (the Fifth Circuit does not require a signature to show intent).

Additionally, Garrett is bound to the arbitration agreement regardless of her understanding of the agreement. The parties to a contract have an affirmative duty to read it, and thus, "knowledge of the terms is imputed to those parties irrespective of whether they read the contract." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Garrett argues she "did not ever voluntarily sign an arbitration agreement; in fact, I did not know what arbitration was until just a few weeks ago." (Document 15-1 at 3). However, Garrett accepted the terms of the agreement, and, as a result, Garrett had a duty to read the contract. Whether Garrett read or understood the agreement is immaterial to its validity.

To overcome the evidence submitted by Hooters as to Garrett's consent to arbitrate, Garrett would have to offer some evidence of fraud, duress, or unconscionability. *Epic Sys.,* 138 S.Ct. at 1616. Although Garrett accuses Hooters of termination without notice, she has offered no evidence that the agreement was extracted in any way that would render the contract unenforceable. Additionally, there are no plausible allegations that any such evidence exists.

Furthermore, there is no real dispute that the employment-related claims Garrett alleges in this case fall within the scope of the arbitration agreement. For an arbitration agreement to cover a claim, it must be susceptible of an interpretation that "fits" the dispute. *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 2005)). Here, the Arbitration Agreement states that it applies to all employment disputes between Hooters and Garrett. (Document No. 12-1, Exhibit A at 9). Garrett's complaints and allegations in this case all arise out of her employment relationship with Hooters. Thus, the arbitration agreement covers the claims at issue herein. As a result, the Court must

8

compel arbitration. Further, as provided in the Arbitration Agreement, "By signing this Agreement, Individual and the Company waive their right to commence, be a party to, or act as a class member in, any class or collective action in any court action against the other party relating to employment issues. Further, the parties waive their right to commence or be a party to any group, class or collective action claim in arbitration or any other forum." Therefore, Garrett is, pursuant to the documents she signed, not allowed to serve as a WARN Act class representative under Fed. R. Civ. P. 23.

Because Hooters has offered evidence of a valid agreement to arbitrate that covered Garrett's claims and allegations in this case, it was for Garrett to offer evidence that the agreement to arbitrate was invalid. *Prevost*, 126 F. Supp. 2d at 442. Garrett has not submitted any such evidence, and therefore, the Motion to Compel Arbitration should be granted.

**III. Conclusion and Recommendation**

Based on the foregoing and the conclusion that there is an agreement between Garrett and Hooters to arbitrate all disputes arising out of the scope of Garrett's employment with Defendant Hooters, and that there is no evidence in the record that calls into serious question the scope or enforceability of that agreement, the Magistrate Judge

RECOMMENDS that Defendant's Motion to Dismiss, Compel Individual Arbitration, and Strike Class Claims (Document No. 12) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on

appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), cert. denied, 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen days bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 5th day of January, 2022.

Frances H. Stacy
United States Magistrate Judge